UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREVOR FORTENBERRY,

    Plaintiff,

v.

UNKNOWN ACKER,

    Defendant.
_____/

Case No. 1:20-cv-1202

Hon. Jane M. Beckering

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by Trevor Fortenberry (referred to as "plaintiff" or "Fortenberry"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). He has sued Corrections Officer "Unknown Acker" for incidents which occurred at the MDOC's Lakeland Correctional Facility (LCF). It appears that defendant's name is actually Dennis Aker. This matter is now before the Court on Aker's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 13).

    **I.**    **Fortenberry's claims**

Fortenberry's claims arise out of an incident which occurred on July 18, 2020, in which Aker allegedly made sexually abusive comments to Fortenberry. Compl. (ECF No. 1, PageID.2-3). Fortenberry alleged that he filed a Prison Rape Elimination Act (PREA) grievance against Aker later that day. *Id*. at PageID.3. That same day, Aker issued Fortenberry a misconduct ticket in retaliation for writing his PREA grievance, *i.e.*, "[o]n 7/18/2020, I received a major misconduct ticket for disobeying a direct order in retaliation for writing that (PREA)." *Id*. at ¶ 22, Page.ID.3.

1

The Court notes that the misconduct ticket was actually written the next day (July 19, 2020). This ticket could not have been in response for "writing that (PREA)" because Fortenberry did not fill out the PREA grievance until July 20, 2020. *See* Misconduct Report (July 19, 2020) (ECF No. 1-2, PageID.13); PREA Grievance (ECF No. 1-1, PageID.11). In the July 19, 2020 misconduct ticket, Aker described the violation as follows:

> As Fortenberry #864744 came into the office and retrieved a caustic bottle and did not leave his ID card for it as required, I directly told him, "you need to leave your ID card for that bottle." He replied, "I'm a porter." Even porter [sic] are required to leave their ID card for a caustic bottle as they are an item to be inventoried. At no time did Fortenberry #864744 comply with me [sic] reasonable and valid order. . .

July 19, 2019 Misconduct Report. Fortenberry did not contest the misconduct ticket. He pled guilty and the hearing officer imposed a sanction of two days loss of privileges, beginning on August 5, 2020 and ending on August 7, 2020. *See* July 19, 2019 Misconduct Report.

Aker issued Fortenberry a second misconduct ticket on August 5, 2020, for violating the loss of privileges sanction. *See* Misconduct Report (August 5, 2020) (ECF No. 1-5, PageID.19). Aker described the violation as follows:

> While doing a routine round, I directly observed Fortenberry #864744 sitting at a table in the E2 quiet room. Fortenberry #864744 is currently on loss of privileges sanction imposed by a hearing officer for dates 8-5-20 to 8-7-20. At no time was Fortenberry #864744 authorized to be in the quiet room while on sanctions. . .

August 5, 2020 Misconduct Report. Fortenberry did not contest the August 5, 2020 misconduct ticket. He pled guilty and the hearing officer imposed a sanction of two days loss of privileges, beginning on August 12, 2020 and ending on August 14, 2020. *Id*.

In pleading guilty to the two tickets, Fortenberry signed the following waiver:

> I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed

2

July 9, 2020 Misconduct Report; August 5, 2020 Misconduct Report.

Fortenberry also alleged that Aker's verbal harassment was cruel and unusual punishment in violation of the Eighth Amendment. On July 18, 2020, Aker allegedly told Fortenberry, "I will make your ass hole bleed and there's nothing you can do to stop me." Compl. at PageID.3 (emphasis omitted). About one month later, on August 17, 2020, "with no separation as required according to PD 01.01.140", Aker allegedly "threatened the Plaintiff's life stating he would kill him for writing that (PREA) and putting his job in jeopardy." *Id*. at PageID.5.[1] Fortenberry also alleged that on August 19, 2020, Aker "continued the same sexual abuse, harassments, retaliation, and threats on my life, with no separation as required by PD 01.01.140." *Id*.

Fortenberry filed a multiple count complaint on December 14, 2020. In Count I ("Eighth and First Amendment Violations"), Fortenberry alleged that Aker engaged in excessive sexual verbal abuse/harassment, unnecessary threatening behavior, and intentional retaliatory actions "solely to force Mr. Fortenberry to suffer inhuman treatment and be in fear of his life." Compl. at PageID.5. In Count II ("State law assault and battery"), Fortenberry alleged that Aker's "sexual verbal abuse/harassment was intended to create fear in him so he could test Plaintiff into seeing how far he could advance his predator behavior" and "to terrorize and mentally torture unlawfully and without invitation with the intention to actually touch him unlawfully and without invitation." *Id*. at PageID.6. Fortenberry seeks over $1,000,000.00 in compensatory and punitive damages against Aker and wants an injunction against Akers to "[b]e dismissed of his duties as a MDOC Officer." *Id*. at PageID.7-8.

---

[1] The Court notes that the cited MDOC Policy Directive (PD) 01.01.140 addresses "Internal Affairs." While plaintiff may be referring to PD 03.03.140, which addresses "Sexual Abuse and Sexual Harassment of Prisoners – Prison Rape Elimination Act (PREA)", he has failed to cite any particular provision of that policy.

### II.   Defendant Aker's motion for summary judgment

#### A.   Legal standard

Aker contends that plaintiff's "retaliatory ticket" claims arising from the July 19, 2020, and August 5, 2020 misconduct tickets are unexhausted. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

#### B.   Lack of Exhaustion

##### 1.   Exhaustion requirement

4

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

5

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Aker contends that Fortenberry failed to properly exhaust a grievance with respect to misconduct tickets issued on July 19, 2020, and August 5, 2020. When a prisoner claims that staff issued a misconduct ticket in retaliation for engaging in protected conduct, the prisoner must exhaust the retaliation claim by raising retaliation as a defense during the misconduct hearing and then raising retaliation in seeking an appeal or a rehearing. *See Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).

> Following *Siggers*, courts in both this district and the Eastern District of Michigan have concluded that, in order to properly exhaust a retaliatory misconduct ticket claim, the prisoner must raise that claim at the misconduct hearing and, if unsuccessful, in a motion or application for rehearing or in an appeal.

*Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 1067291 at *3 (W.D. Mich. Feb. 3, 2020) (listing cases), R&R adopted, 2020 WL 1064864 (W.D. Mich. March 5, 2020). The record reflects that Fortenberry did not raise retaliation as a defense to either the July 19, 2020 misconduct ticket or the August 5, 2020 misconduct ticket. Rather, Fortenberry waived a hearing and pled guilty to

6

both misconducts. Accordingly, Fortenberry failed to properly exhaust a First Amendment retaliation claim with respect to the two misconduct tickets.[2]

Finally, to the extent that Fortenberry contends that he exhausted retaliation claims by filing a PREA grievance (Response (ECF No. 16, PageID.107), this argument fails. Even if Fortenberry had exhausted a PREA grievance, he could not use the PREA grievance procedure to exhaust a First Amendment retaliation claim. *See Johnson v. Gust*, No. 1:19-cv-682, 2021 WL 1092665 at *10, R&R adopted, 2021 WL 1091549 (W.D. Mich. March 22, 2021) (citing Policy Directive 03.03.140 ¶¶ EE and II).

Based on this record, Fortenberry did not properly exhaust a claim against defendant Akers with respect to the retaliation based upon the issuance of the July 19, 2020 and August 5, 2020 misconduct tickets.[3] *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Aker's motion for summary judgment as to his unexhausted "retaliatory ticket" claims.

### III.    Eleventh Amendment immunity

Akers' brief includes a separate argument to dismiss the official capacity claim alleged against him. The Court will view Aker's argument in the context of the PLRA, which requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

---

[2] Even if Fortenberry had contested the misconduct ticket as required by *Siggers*, he failed to properly exhaust the "retaliatory ticket" claims. Fortenberry did not file a grievance related to the July 19, 2020 misconduct ticket. *See* MDOC Prisoner Step III Grievance Report (ECF No. 14-3, PageID.94-95). While Fortenberry filed a grievance claiming that on August 5, 2020, Aker "maliciously and sadistically" violated his Constitutional Rights by writing a "fabricated Major Misconduct ticket" in retaliation for plaintiff filing a PREA grievance, this grievance was rejected. *See* Grievance LCF-20-08-0780-27A (ECF No. 14-3, PageID.96-99).

[3] The Court denied Fortenberry's motion to amend the complaint to include an affidavit/declaration from prisoner Terry Grant Jones (ECF Nos. 17 and 17-1). Even if the Court considered the Jones affidavit/declaration as part of the record, it would not change the result; the affidavit/declaration has no bearing on the issue of exhaustion.

relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2); 42 U.S.C. § 1997e(c). The Court must read Fortenberry's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept his allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). "[T]o survive scrutiny under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Applying these standards, the Court should dismiss Fortenberry's complaint to the extent it seeks to state a claim against defendant Aker in his official capacity. Fortenberry has sued Aker in both his official and individual capacities. A lawsuit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Department of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has specifically held that the MDOC is immune from a § 1983 suit under the Eleventh Amendment. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 Fed. Appx. 646, 653-54 (6th Cir. 2010).

In his response, Fortenberry states that he can maintain an official capacity claim against Akers because he is seeking injunctive relief. *See* Response at PageID.107. In his complaint, Fortenberry asks the Court to "[i]ssue an injunction ordering the Defendant Acker to: 1. Be dismissed of his duties as a [sic] MDOC officer." Compl. at PageID.7. As the Sixth Circuit stated in *Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002):

> *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), holds that the Eleventh Amendment does not bar a federal court from issuing an injunction ordering prospective relief against a state official in order to prevent future constitutional violations.

*Barton*, 293 F.3d at 948 (citing *Young*, 209 U.S. at 159-60). Here, Fortenberry is asking for prospective relief against a state official (Akers). However, Akers is the only defendant in this lawsuit. There is no state official named as a defendant in this case that the Court can enjoin to "dismiss" Akers from his duties at the MDOC. While the Court can enjoin Akers to prevent future constitutional violations, the Court cannot enjoin Akers to "dismiss" himself from his duties or employment at the MDOC. Fortenberry's claim against Akers in his official capacity is not plausible on its face. *See Iqbal*, 556 U.S. at 678; *Hill*, 630 F.3d at 471. Accordingly, Fortenberry's official capacity claim against Aker should be dismissed.

## IV.    Recommendation

For these reasons, I respectfully recommend that defendant Aker's motion for summary judgment (ECF No. 13) be **GRANTED** as to the "retaliatory ticket" claims based upon the July 19, 2020 and August 5, 2020 misconduct tickets.

9

I further recommend that plaintiff Fortenberry's official capacity claim against Aker and his request for an injunction be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c).

Dated:  June 13, 2022                                           /s/ Ray Kent
                                                                RAY KENT
                                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).